UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JAMMIAN CREWS,

                    Petitioner,                **REPORT AND RECOMMENDATION**
    -vs-                                   **No. 02-CV-0202(RJA)(VEB)**

VICTOR T.  HERBERT, Superintendent of
Attica Correctional Facility and ATTORNEY
GENERAL OF THE STATE OF NEW YORK,

                    Respondents.

## I.      INTRODUCTION

Petitioner Jammian Crews ("Crews" or "Petitioner"), proceeding *pro se*, has filed a

petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his state court

conviction.[1] By Erie County Indictment No. 97-1825-001, Crews was charged with one count

each of second degree (intentional) murder (New York Penal Law ("P.L.") § 125.25(1)), second

degree (depraved indifference) murder (P.L. § 125.25(2)), attempted second degree (intentional)

murder (P.L. §§ 110.00, 125.25(1)), first degree assault with a dangerous weapon (P.L. §

120.10(1)), first degree assault (P.L. § 120.10(3)), fourth degree criminal possession of a weapon

(P.L. § 265.01(2)), and third degree criminal sale of a controlled substance (P.L. § 220.39(1)).

Following a jury trial, Crews was convicted of second degree (depraved indifference) murder,

attempted murder, first degree assault, and criminal possession of a weapon. He was sentenced to

an indeterminate term of 25 years to life on the depraved indifference murder conviction,

---

[1]      This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for the issuance of
a report and recommendation regarding the disposition of Crews' petition.

concurrent indeterminate terms of 12½ to 25 years for the attempted murder and assault convictions, and a concurrent determinate term of 1 year for the criminal possession conviction.

Crews' conviction was unanimously affirmed on direct appeal by the Appellate Division, Fourth Department, of New York State Supreme Court. *People v. Crews*, 281 A.D.2d 904 (App. Div. 4th Dept. 2001). Leave to appeal was denied by the New York Court of Appeals. *People v. Crews*, 96 N.Y.2d 861 (N.Y. 2001). This habeas petition followed, in which Crews raises the following grounds for habeas relief: (1) he was denied his right to a fair trial because the trial court refused his request to issue a missing witness jury instruction; (2) he was denied his right to present a defense because he was precluded from introducing his "NYSIIS" or "rap sheet", which indicated his height at the time of the arrest; and (3) the first degree assault conviction must be reversed because that charge is a lesser concurrent offense of attempted second degree murder. All three of these contentions were raised on direct appeal and rejected on the merits.

Crews subsequently sent a letter to the Clerk of Court titled "Writ Held In Abeyance Requested." *See* Docket No. 9. Crews stated that "[a]t this time . . . there has been some changes in the Law with respect to my case and some claims that need to be addressed by the Lower Court and if by chance, be exhausted in order to be heard in This Court." *Id.* Crews stated, "I am requesting for an extension of time and/or my Writ of Habeas Corpus to be held in abeyance until the claims I am addressing to the Lower State Court can be resolved." *Id.* In this letter, Crews provided no further details as to the claims he intended to present to the state court and did not indicate whether he had commenced exhaustion proceedings in state court.

This Court issued an Order on denying Crews' motion for a stay without prejudice with leave to re-file. *See* Docket No. 12. The Court noted that Crews had only sought to have his

petition stayed *after* there was a change in the law that he believed was favorable to him, and presumed that he was referring to the shift in New York state's jurisprudence regarding depraved indifference murder. Since Crews' conviction, there have been significant developments in New York regarding the law of depraved indifference murder and the legal sufficiency of evidence supporting such a claim. *See*, *e.g.*, *People v. Feingold*, 7 N.Y.3d 288 (N.Y. 2006). The Court explained that to the extent that he intends to assert any claims based this jurisprudential shift, Crews could not fulfill the *Rhines*[2] criteria for granting a stay because, among other things, any such claims based on *Feingold* were barred federal habeas review based on specific finding by the New York Court of Appeals that the change in law cannot be applied retroactively.  Because Crews is proceeding *pro se* and because his letter to the Court was unclear as to whether there are claims in addition to those based on the change in law regarding depraved indifference murder, the Court gave Crews the opportunity to refile his motion for a stay if there were other claims that he sought to exhaust in the state courts. The Court instructed petitioner wished to re-file his motion for a stay, he was obligated to do so within thirty (30) days of his receipt of the Court's Order. *See* Docket No. 12. More than thirty days has passed, and Crews has failed to respond or seek an extension of time to do so. The Court finds that Crews' inaction manifests an intent to abandon his stay request. Accordingly, the Court will proceed to consider the merits of Crews' original petition.

For the reasons that follow, the Court recommends that the petition be dismissed.

## II.    BACKGROUND

Late in the evening on August 11, 1997, Stefan Krug ("Krug") was walking down the

---

[2]        *See Rhines v. Weber*, 544 U.S. 269, 277 (2005).

street when his neighbor, Paul Dick ("Dick") drove by in his truck. T.158-59.[3] They stopped to talk, and Dick asked Krug, a mechanic, to listen to a noise that was coming from Dick's truck. T.158-160. Krug said he would do so, provided that Dick would give him a ride to 24 Gibson Street. Krug testified that he wanted to go to Gibson Street to by crack cocaine from Crews, whom he had been purchasing it from on a near-daily basis during the summer of 1997. T.160-61.

Unfortunately, Dick agreed, and drove his truck to 24 Gibson Street, where they found Crews sitting on the porch in the doorway. T.163. Krug walked up to the house while Dick waited for him in the truck. T.164. Krug was going to attempt to get something for next-to-nothing, and handed Crews two $1-bills whose corners had been replaced by corners from a $10-bill and a $20-bill. T.162-63. When Crews saw that the money was phoney, he looked at Krug and said, "Get the fuck out of here!"  T.165.

Krug retreated to the truck and as he got in, he heard Dick exclaim, "That man has a gun!" T.166. Krug looked out the passenger-side window and saw Crews standing about 4 to 7 feet away, pointing a shotgun at the passenger-side window of the truck. T.166-67. Just as Krug yelled, "Go!" to Dick, Crews opened fire. Shells from his shotgun shattered the window and struck Krug in his arm and Dick in the abdomen. T.168. Krug immediately heard Dick say, "I think I might be hit." T.168.

Krug attempted to take control of the truck, but because of the gunshot wound to his arm, he was having difficulty. He ended up maneuvering the truck by steering with his right hand and working the accelerator with his left foot. T.168. Krug drove away from Petitioner's house but

---

[3]        Citations to "T.__" refer to the trial transcript.

4

did not get far, crashing the truck into a concrete brick in a field. T.168-69. The police officers

that had been chasing after the truck called for emergency assistance and both Krug and Dick

were taken to the hospital.

Dick died of internal injuries and extensive bleeding from the large, flat shotgun pellets

that pierced his abdomen. T.299. Krug sustained severe injuries to his left arm; his bones were

shattered and it was necessary for the surgeons to use metal bars, screws, and skin grafts to treat

the injuries. T.173. As a result of the shotgun wound, Krug's ability to use that arm is markedly

reduced. He has permanent nerve damage and the only sensation in the arm is a constant,

arthritic ache. T.174.

After the incident, Crews confessed what he had done to several individuals. Aeriell

Bush, who also lived at 24 Gibson Street, was awakened by the shotgun blast. T.212, 215. When

she went to see what the commotion was about, Bush saw three individuals running through her

house; one of them was Petitioner, who told her that "somebody gave him some fake money and

he shot him." T.214-15. Bush also overheard Petitioner talking with her brother, Elizah Melton.

According to Bush, Petitioner told Melton that "the man was trying to give him some fake

money and run off . . . [s]o, he shot him." T.216. Melton testified that Petitioner said, "I shot

somebody" but only suggested that the reason for the shooting was that "somebody gave him

some fake money." T.125.

DeMarr Johnson, who also lived at 24 Gibson Street, was the next person to whom

Petitioner confessed. Johnson, Bush's brother, had just lain down to go to sleep when he heard

the gunshot. T.143-45. Johnson jumped up and went to the kitchen, where he saw Petitioner

come in through the front door alone. T.145-46. According to Johnson, Petitioner said that "he

just shot somebody, they gave him false money." T.147. Petitioner showed Johnson the money, "a one dollar bill with a twenty taped in the corner [and] another one dollar bill with a ten taped in the corner." T.148.

Andre Worthy was listening to the radio in the living room at 24 Gibson Street when he heard the "boom" of a shotgun. T.82, 85-86. Worthy ventured out to the porch where he saw Petitioner and another individual, as well as the other occupants of the house. T.86. Worthy heard either Petitioner or the other individual admit to shooting at a window because someone gave him fake money. T.87-89.

Robert Wilkins testified that twice within two months of the shooting, Petitioner related the same scenario: "Two guys came by and one wanted to buy some crack, another guy had phony money. So he [Petitioner] told the guys, basically, wait, I go get it, something like that. And the man [Petitioner] just started blazing," by which Wilkins meant "shooting." T.276-77, 286. With regard to why he had done it, Petitioner told Wilkins, "I have to set an example so nobody else won't come around and do that again." T.278.

Petitioner did not testify or call witnesses. The defense theory was misidentification.

## III.    DISCUSSION OF PETITIONER'S CLAIMS

### A.    Failure to Issue a Missing Witness Instruction to the Jury

Crews contends that the trial court erred in refusing to exercise its discretion to give the jury a missing witness instruction based on the prosecution's failure to call Reeseie Nash, who witnessed the shooting. Defense counsel argued that Nash would have offered non-cumulative testimony concerning "his very complete observations of the entire incident from a short distance away, including the shooter's approach to the vehicle." The prosecutor opposed defense

counsel's request to charge, noting that it was possible that Nash would testify unfavorably to the prosecution, and in addition that the rest of Nash's testimony would have been cumulative. In fact, Nash's sworn statement to the police (defense counsel's offer of proof) included a comment that Petitioner had been "smoking some marijuana" prior to the shooting. Nash also claimed that another individual at the scene named "Chris" had warned Petitioner, immediately before the shooting, that the two victims were "about to run [Petitioner] over." People's Appellate Brief at 15 (quoting Appellate Appendix at 57), attached as Respondent's Exhibit B.[4] Thus, Nash's statement not only contained an eyewitness description, but also had information bearing on the defenses of intoxication and justification (self-defense), and would be favorable to Petitioner's case. The trial court found that the defense offer of proof was "insufficient to establish that there is a pending issue upon which Mr. Nash would be expected to support one side or another" and the "People are under no duty to call all their potential witnesses." T.365. The Appellate Division agreed that the missing witness charge was properly denied because "[d]efendant failed to meet his burden of demonstrating that the witness would have testified favorably to the prosecution." *People v. Crews*, 281 A.D.2d at 904 (citing *People v. Gonzalez*, 68 N.Y.2d 490, 495 (N.Y. 1986)).

"Due process does not require the giving of a jury instruction when such charge is not supported by the evidence." *Blazic v. Henderson*, 900 F.2d 534, 541 (2d Cir. 1990). Where, as here, the alleged error is one of omission, it "is less likely to be prejudicial than a misstatement of the law," thereby making the petitioner's "burden . . . especially heavy." *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977).  Thus, while habeas relief may not be granted for a "'mere error of

---

[4]     Respondent's Exhibits are contained in a separately bound volume filed in connection with his Answer to the Petition.

state law,' *Blazic*, 900 F.2d at 541, a finding that the petitioner was erroneously deprived of a

jury instruction to which he was entitled under state law is the first step in the determination

whether that error violated the petitioner's federal due process rights." *Davis v. Strack*, 270 F.3d

111, 123 (2d Cir. 2001).

In order to obtain a missing witness charge under New York state law, the party seeking

the charge must make a *prima facie* showing that "the uncalled witness is knowledgeable about a

material issue upon which the evidence is already in the case; that the witness would naturally be

expected to provide noncumulative testimony favorable to the party who has not called him, and

that the witness is available to such party." *People v. Gonzalez*, 68 N.Y.2d at 427; *accord People*

*v. Kitching*, 78 N.Y.2d 532, 536 (N.Y. 1991). "'Whether a missing witness charge should be

given lies in the sound discretion of the trial court.'" *Reid v. Senkowski*, 961 F.2d 374, 377 (2d

Cir.1992) (quoting *United States v. Torres*, 845 F.2d 1165, 1170-71 (2d Cir.1988) and citing

*United States v. Saa*, 859 F.2d 1067, 1076 (2d Cir.1988), *cert. denied*, 489 U.S. 1089 (1989)).

Here, the trial court made the factual determination that there was an insufficient basis on

which to find a crucial element of the missing witness charge–that Nash's testimony would

naturally have been favorable to the party that did not call him. "[I]n a habeas proceeding, 'a

determination of a factual issue made by a state court shall be presumed to be correct,' unless

rebutted by clear and convincing evidence." *Morris v. Reynolds*, 264 F.3d 38, 47 (2d Cir. 2001)

(quoting 28 U.S.C. § 2254(e)(1)). Since Crews has not come forward with any evidence to rebut

this presumption of correctness, which is owed deference and which is, incidentally, supported

by the record, he cannot obtained habeas relief on this claim. *Accord Correa v. Duncan*, 172 F.

Supp.2d 378, 382 (E.D.N.Y. 2001) (denying habeas relief on claim alleging failure to give

missing witness instruction where petitioner failed to rebut presumption of correctness accorded

to trial court's factual determination that testimony of missing witnesses was cumulative, making

charge unwarranted).

### B.      Denial of the Right to Present a Defense

Crews contends that the trial court denied him of his right to present a defense as a result

of an evidentiary ruling he made. Crews pointed to testimony that the shooter was described as

5'10" tall and argued that he should have received into evidence a so-called "arrest and booking

form" which indicated that Crews supposedly was only 5'4" tall at the time of the crime. When

defense counsel initially framed this issue, he stated as follows: "I am going to ask the [Trial]

Court to take judicial notice and inform the Jury that when the Defendant, that as of the date of

the Defendant's arrest, according to the official records of the State of New York Division of

Criminal Justice Services that he was five feet four inches in height." T.356. The prosecutor

opposed the request, stating, "I know that very often they don't measure the height of the

individuals they arrest. They ask them how tall [they] are and [they] give them a statement. I

don't know how tall [Petitioner] was. I don't know if the records are accurate with regards to his

height." T.358.

Before ruling on the issue, the trial court sought clarification as to whether the record in

question was a "booking sheet", and defense counsel responded that it was not. T.359. Defense

counsel explained that what he had was "a copy obtained by the Erie County District Attorney's

Office from the State of New York Division of Criminal Justice Services showing the

defendant's date of birth, his race, his sex, his height, his social security number." *Id.* In other

words, defense counsel was describing Crews' "NYSIIS", a computer-generated report often

referred to as a "rap sheet." The trial court denied the defense request, stating that the NYSIIS
was not admissible as a business-record exception to the hearsay rule. The trial court told
defense counsel, "If you wanted your client to stand up for the Jury so they can observe his
height, you can do that." T.359. Defense counsel protested that his client was a "young man . . .
who was arrested last year maybe nine months ago and . . . is in a growing spurt." T.359. The
trial court reiterated its ruling and said that Crews could stand up for the jury. *Id.*

Defense counsel objected further, stating, "I am not asking to have this entered as a
business record. I am just asking the Court to inform the Jury as to what is contained [in it]."
T.360. The trial court said, "I understand that, but I don't know the reliability of [the NYSIIS]. I
will deny [the request]. You can have your client stand if you wish the Jury to observe his
height." T.360.

Subsequently, on direct appeal, Crews changed the legal basis of his argument and
argued that he was denied the right to present a defense by the exclusion of the document. Crews
asserted that admission of the document was constitutionally required, even though it contained
inadmissible hearsay. The Appellate Division denied the claim without elaboration. *People v.
Crews*, 281 A.D.2d at 905 ("We have considered defendant's remaining contentions and
conclude that they are without merit.").

"[E]rroneous evidentiary rulings do not automatically rise to the level of constitutional
error." *Rosario v. Kuhlman*, 839 F.2d 918, 924 (2d Cir. 1988). Rather, the habeas court's duty "is
to determine whether the excluded testimony was material to the presentation of the defense so
as to deprive the defendant of fundamental fairness." *Id.* Thus, in the case of an erroneous
evidentiary ruling, "the writ would issue *only* where petitioner can show that the error deprived

10

[him] of a *fundamentally fair* trial." *Taylor v. Curry*, 708 F.2d 886, 891 (2d Cir. 1983) (emphases in the original; citations omitted). It is the materiality of the excluded evidence to the presentation of the defense that determines whether a defendant has been deprived of a fundamentally fair trial. *Id.* (citing *United States v. Agurs*, 427 U.S. 97, 112-13 (1976)).

The trial court's decision regarding the defense counsel's request to take judicial notice of information contained in the NYSIIS or rap sheet was not incorrect as a matter of state law. Clearly, although defense counsel framed his request as one of "judicial notice", he was asking the trial court to introduce hearsay on Crews' behalf. *See* PRINCE, RICHARDSON ON EVIDENCE, § 8-101 (Richard Farrell, ed., 11th ed.) (1995) ("[A] statement made out of court, that is, not made in the course of the trial in which it is offered, is hearsay if the statement is offered for the truth of the fact asserted in it."); *People v. Huertas*, 75 N.Y.2d 487, 491-92 (N.Y. 1990). That is, defense counsel wanted a portion of the rap sheet's contents, Crews' height, to be introduced for the truth of a fact asserted in it–namely, Crews' height. Moreover, this does not seem to be the type of situation to which the doctrine of judicial notice properly applied. *See Murray v. Donlan*, 77 A.D.2d 337, 348 n. 4 (App. Div. 3d Dept. 1980) ("[T]he court understands judicial notice to be that 'mode of ascertainment by judicial authority of matters of universal knowledge without having such matters established by evidence in the individual case[.]'") (quoting 21 N.Y. Jur., Evidence, § 8, p. 165); *see also People v. Longo*,  Misc.2d 171, 172 N.Y.S.2d 633 (N.Y. Sup. Ct. 1957) (finding that where no proof was elicited as to the size of lettering on sign specifying speed limit or as to the existence of any terminal sign as required by statute, court could not take judicial notice of the existence of the sign and its conformity with statute in all respects) (citing *People of City of Buffalo v. Beck*, 205 Misc. 757, 758-759 (N.Y. Sup. Ct. 1954) ("The essence of

judicial notice is that the trier of the facts, whether he be judge or juror, will assure as true for the

purpose of the case before him, certain facts without requiring proof thereof. The fundamental

justification for this legal phenomenon is that the trier of the facts possesses in common with the

public knowledge of facts of common occurrences and notoriety.").

Finally, I agree with respondent the trial court was correct in determining that the

uncertified NYSIIS rap sheet was not admissible as a business record.  *See Bradley v. West*, No.

03CV3212NGGKAM, 2005 WL 3276386, at *15 (E.D.N.Y. Dec. 2, 2005). In *Bradley*, the

habeas petitioner complained that the prosecution wrongly refused to 'honorably stipulate to the

charge that [Bradley] was not in the confines of New York City,' and falsely 'advocated that the

rap sheet was inadmissible in order to prevent [a witness'] testimony [regarding his sightings of

Petitioner] from being corrected.'" *Id.* (quotation omitted). The district court noted that it was

"unaware of any federal constitutional mandate that trial court either take judicial notice of or

force the prosecution to stipulate that Bradley was outside New York City at a certain time,

when the precise dates of Bradley's absence were not authoritatively established by admissible

evidence." *Id.* The district court agreed with respondent that "the uncertified rap sheet was not

admissible under state evidence rules, *see* N.Y. C.P.L.R. § 4518(c) (McKinney 2005), nor [was]

it within this Court's province to reexamine the state trial court's  determination of a state law

issue, absent a showing that a federal constitutional right was violated." *Id.* (citing *Estelle v.

McGuire*, 502 U.S. 62, 67-68  (1991) (internal citations to record omitted)).

To the extent that Crews claims that his inability to admit the NYSIIS rap sheet deprived

him of the right to present a defense, I do not believe that he has demonstrated a constitutional

violation. "[T]he right to present a defense is one of the 'minimum essentials of a fair trial.'"

*United States v. Almonte*, 956 F.2d 27, 30 (2d Cir. 1992) (quoting *Chambers v. Mississippi*, 410

U.S. 284, 294 (1973)). In exercising this right, "the accused, as is required of the State, must

comply with established rules of procedure and evidence designed to assure both fairness and

reliability in the ascertainment of guilt and innocence." *Chambers*, 410 U.S. at 302. However,

the right to present a defense includes "more than the right to present the direct testimony of live

witnesses, and includes the right under certain circumstances, to place before the jury secondary

forms of evidence, such as hearsay or . . .  prior testimony." *Rosario v. Kuhlman*, 839 F.2d 918,

924 (2d Cir. 1988). (citing *Chambers*, 410 U.S. at 294).  The Supreme Court in *Chambers* found

that the state court's refusal to admit hearsay evidence that another person had confessed to the

crime violated the defendant's due process right to present a defense. The *Chambers* court found

the confessions sought to be introduced were extremely reliable and of tremendous probative

value to the defense, and the state had no had no legitimate interest in precluding the testimony

on grounds of unreliability. *Chambers*, 410 U.S. at 302. The Supreme Court found that "where

constitutional rights directly affecting the ascertainment of guilt are implicated, the hearsay rule

may not be applied mechanistically to defeat the ends of justice." *Id.  See also Rock v. Arkansas*,

483 U.S. 44, 56, 61 (1987).

Here, in contrast, Crews offered nothing to substantiate his assertion that the NYSIIS or

rap sheet has any indicia of reliability. I note that both state and federal courts have held that a

NYSIIS or rap sheet was inadmissible to prove the fact of a prior conviction. *See People v.

Allah*, 66 A.D.2d 665, 410 N.Y.S.2d 833, 834 (App. Div. 1st Dept. 1978) (" Likewise, the

uncertified NYSIIS arrest record containing matter culled from other records even though based

upon Social Security number and other social data and even though kept in the regular course of

business, does not suffice to connect the defendant, beyond a reasonable doubt, to the prior

felony conviction."); *Francis v. Gonzalez*, 442 F.3d 131, 142-43 (2d Cir. 2006) (holding that

while applicable immigration regulations allow an immigration judge to consider a police "rap

sheet" referring to a specific conviction, the judge may not deem such a report conclusive proof

of conviction of a removable offense as rap sheets "lack the necessary information to describe

the full record of conviction and do not necessarily emanate from a neutral, reliable source"). As

the prosecutor pointed out, the information that Crews' height was 5'4" could have come from

Crews himself. I also agree with respondent that there were more reliable ways for Crews to

prove his height at the time of the crime, such as by calling witnesses or by taking advantage of

the trial court's offer to stand up and have his height estimated by the jury, or both. Respondent

points out that Crews never stated that he was unable to find a witness to testify about his height

at the time of the incident. As respondent argues, Crews' concern that he underwent a substantial

"growth spurt" in the interim between the crime and the trial could have been explained by a

medical witness, if had he been able to locate an expert to so testify. Since Crews' height could

have been established by other means more reliable than the NYSIIS, the trial court's decision to

preclude the NYSIIS was consistent with the reliability concerns expressed in *Chambers*. Crews

has demonstrated neither that the NYSIIS had strong probative value nor that it bore indicators

of reliability such that its preclusion was unwarranted and unconstitutional in light of *Chambers*

*v. Mississippi*, 410 U.S. at 302. I therefore recommend dismissal of Crews' claim that he was

denied his right to present a defense.


**C.      Dismissal of the assault conviction as an inclusory concurrent count**

As his third ground for relief, Crews asserts that his conviction for first degree assault should be dismissed as an inclusory concurrent count of attempted murder in the second degree. As respondent points out, because this claim presents a pure issue of New York state law, it is not cognizable in this federal habeas proceeding. *E.g.*, *Daughtry v. Conway*, No. 03-CIV-4836-RJHTHK, 2006 WL 2850260, at *18 (S.D.N.Y. Sept. 29, 2006); *Gardner v. Greiner*, No. 97-CV-2484 (JG), 2000 WL 863956, at *3 (E.D.N.Y. June 21, 2000). In any event, there has been no error of New York state law because assault in the first degree is not an inclusory concurrent count of attempted second degree murder. *E.g.*, *People v. Alford*, 251 A.D.2d 1032, 675 N.Y.S.2d 267, 268 (App. Div. 4th Dept. 1998). "Where an offense charged in one count is greater than any charged in the other counts, and when the lesser offense is necessarily included in the greater offense, the lesser offense is described as an 'inclusory concurrent count.'" *People v. Colon*, 46 A.D.2d 624, 359 N.Y.S.2d 888, 889 (App. Div. 1st Dept. 1974). "Assault and criminal possession of a weapon were at one time held to be lesser included offenses of attempted murder[.]" *People v. Davis*, 95 A.D.2d 837, 838, 463 N.Y.S.2d 876, 878 (App. Div. 2d Dept. 1983) (citations omitted). However, following the New York Court of Appeals' decisions in *People v. Green*, 56 N.Y.2d 427 (N.Y. 1982), and *People v. Glover*, 57 N.Y.2d 61 (N.Y. 1982), that is no longer the case. *People v. Davis*, 95 A.D.2d at 838. As the Second Department explained in *People v. Davis*, "[b]ecause it is possible to attempt murder in the second degree without possessing a gun and without physically injuring someone, assault and criminal possession of a weapon are not lesser included offenses of attempted murder in the second degree[.]" *Id.* (citing *People v. Glover*, 57 N.Y.2d at 64; *People v. Green*, 56 N.Y.2d at 430-31). Thus, Crews was not entitled under C.P.L. § 300.40(3)(b) to have his first degree assault

15

conviction dismissed as an inclusory concurrent count of attempted murder. This claim

accordingly should be dismissed as not cognizable and, in the alternative, as without merit.

IV.    **CONCLUSION**

For the reasons set forth above, the Court recommends that the petition for a writ of

habeas corpus filed by Jammian Crews be denied. The Court furthermore recommends that no

Certificate of Appealability should issue with respect to any of Crews' claims because Crews has

not made a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. §

2253(c)(2).

/s/ *Victor E. Bianchini*

_____
VICTOR E. BIANCHINI
United States Magistrate Judge

Dated:  October 24, 2008
          Buffalo, New York.

16

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Fed. R. Civ. P. 72(b) and Local Rule 72.3(a)(3).

The District Court ordinarily will refuse to consider on *de novo* review arguments, case law and evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. *See, e.g., Patterson-Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985, 990-91 (1ˢᵗ Cir. 1988).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72.3(a)(3), or with the similar provisions of Rule 72.3(a)(2) (concerning objections to a Magistrate Judge's Decision and Order), may result in the District Court's refusal to consider the objection.**

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to petitioner and respondent.

17

**IT IS SO ORDERED.**

/s/ *Victor E. Bianchini*

_____

VICTOR E. BIANCHINI
United States Magistrate Judge

Dated: October <u>24</u>, 2008
      Buffalo, New York